## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DELTESS CORPORATION** | **CIVIL ACTION** |
| **v.** | **NO. 18-4006** |
| **RIO BRANDS, LLC** | |

## MEMORANDUM RE: MOTION FOR PRELIMINARY INJUNCTION

**Baylson, J.**                                                                              **December 21, 2018**

### I.      BACKGROUND

Plaintiff Deltess Corp. ("Deltess") has moved for a preliminary injunction against Defendant Rio Brands, Inc. ("Rio") to prevent alleged ongoing infringement of Deltess's U.S. Patent No. 6,854,807 (the "'807 Patent"). (ECF 4, "Mot." or "Motion"). For purposes of this Motion, Deltess has only moved for a preliminary injunction on Claim 4 of the '807 Patent. The majority of briefing in this matter has been filed under seal.

The '807 Patent covers the design of Deltess's "OSTRICH 3N1" chair, a beach chair that allows persons to lie on their stomachs comfortably and read without neck or back strain. Mot. at 1. Deltess's founder, Dave D'Alessandro, obtained the '807 Patent on February 15, 2005, and Deltess then began selling the chair under the name OSTRICH[1] in August of 2005. Id. at 3–4; see also D'Alessandro Decl. (ECF 4-5) ¶ 23. Deltess claims it had great commercial success with the OSTRICH 3N1, with sales growing through 2017 to markets in the U.S., Canada, Europe, and Australia. Id. at 4; D'Alessandro Decl. ¶¶ 16, 20–21.

---

[1]      Deltess explains that "3N1" references "the fact that the chairs are 'three chairs in one'" because a multi-positional back and footrest allows the chair to be used in an upright position, as a recliner, or as a chaise lounge. Mot. at 3 n.2.

In 2017, Rio entered the market with the allegedly infringing design, known as the "Read Through Lounger." Id. Deltess claims that Rio was aware of the OSTRICH design since 2011. Id.; Tesser Decl. (ECF 4-4) ¶ 4. Deltess then became aware of the Read Through Lounger when its representatives saw it at a trade show in May of 2017. Tesser Decl. ¶ 10. Deltess received confirmation that Rio was selling the Read Through Lounger in December of 2017, and first saw it for sale on Amazon's website in March of 2018. Suppl. D'Alessandro Decl. (ECF 31-3, 32) ¶¶ 3–7. Since Rio entered the market with its allegedly infringing chair, Deltess claims that its sales have decreased, its customers have dried up, and its prices have been driven lower. Mot. at 6–8. Deltess thus seeks a preliminary injunction to prevent Rio from continuing to produce the Read Through Lounger.

## II.    PROCEDURAL HISTORY

Deltess filed the instant Motion on September 20, 2018. (ECF 4). Rio responded in opposition to Deltess's Motion on October 4, 2018 (ECF 9, "Opp'n" or "Opposition"), and Deltess replied on October 11, 2018 (ECF 19, "Reply"). Following a telephone conference held on October 16, 2018, the Court ordered the parties to submit supplemental briefing. (See ECF 24, 28). Rio filed its Supplemental Opposition on October 26, 2018 (ECF 29, 30), and Deltess filed its Supplemental Reply on November 5, 2018 (ECF 31, 32).

The Court held oral argument on Deltess's Motion on November 19, 2018. At oral argument, the Court asked the parties to submit letters addressing: (1) whether the Court should consider any adverse impact on third parties, including Rio's distributors or retailer-customers, when conducting the preliminary injunction inquiry; and (2) what impact Deltess' delay in filing its motion should have on the preliminary injunction inquiry. The Court also asked for financial information about Rio's pending sales for 2018 and 2019.

The parties submitted letters containing the requested information on November 28, 2018, as well as follow up letters further addressing delay on December 13, 2018. The Court has carefully considered all filings, exhibits, and submissions in deciding Deltess's Motion.

## III.    LEGAL STANDARD

"A preliminary injunction 'is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Trebro Mfg., Inc. v. Firefly Equipment, LLC, 748 F.3d 1159, 1165 (Fed. Cir. 2014) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). The district court will grant a motion for preliminary injunction if the movant can show that: "(1) it has a reasonable likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) the balance of hardships tips in its favor; and (4) an injunction would be consistent with the public interest." Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1350–51 (Fed. Cir. 2000)).[2] Although "[n]o single factor is dispositive," the Court will not grant a preliminary injunction unless the movant "establishes both of the first two factors." Quad/Tech, Inc. v. Q.I. Press Controls B.V., 701 F. Supp. 2d 644, 649 (E.D. Pa. 2010) (Robreno, J.), aff'd, 413 F. App'x 278 (Fed. Cir. 2011) (citing Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

---

[2]    "In deciding a motion for preliminary injunction in a case involving claims of patent infringement, a district court must apply the substantive standards provided for by the Federal Circuit." Lawman Armor Corp. v. Winner Int'l, Inc., No. CIV. A. 01-1605, 2002 WL 123342, at *9 (E.D. Pa. Jan. 28, 2002) (McLaughlin, J.), aff'd, 50 F. App'x 427 (Fed. Cir. 2002). See also Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1451 n. 12 (Fed. Cir. 1998) ("[A] preliminary injunction of this type, although a procedural matter, involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit.]").

## IV.    LEGAL ANALYSIS

### A.    Likelihood of success on the merits

To establish a likelihood of success on the merits, Deltess must show that, "in light of the presumptions and burdens that will inhere at trial on the merits," it will likely prove that Rio's Read Through Lounger infringes Claim 4 of the '807 patent, and the infringement claim will likely withstand Rio's challenges to the validity and enforceability of that claim. See Amazon.com, Inc., 239 F.3d at 1350. To analyze this factor, the Court must first "determine the scope of the patent claims," and then "determine whether properly interpreted claims encompass the accused structure." Hybritech Inc. v. Abbott Labs., 849 F.2d at 1446, 1455 (Fed. Cir. 1998).

A determination of Deltess's likelihood of success on the merits would require a complex analysis by the Court. The Court will thus assume, for purposes of this motion, that Deltess can prove that it is likely to succeed on the merits by showing that the '807 Patent is valid and that the Rio product is infringing Claim 4. Deltess has failed to show that it will suffer irreparable harm without a preliminary injunction, as discussed below, which is enough to deny the Motion.

### B.    Irreparable harm

Absent an injunction, Deltess argues that it will suffer irreparable harm in the following ways:  (a) price erosion; (b) lost sales; and (c) harm to its customer goodwill and relations. Mot. at 13. Deltess contends that it has suffered, and will continue to suffer, those injuries because Rio and its Read Through Lounger are in direct competition with Deltess and its OSTRICH 3N1 chair. Id. at 13–17. Among other arguments, Rio contests Deltess's showing of irreparable harm by highlighting that Deltess did not seek a preliminary injunction for nearly a year and a half after learning of the Read Through Lounger hitting the market. Opp'n at 3.

Delay can be—and is here—a determinative factor in negating a plaintiff's claim of irreparable harm. In reversing a grant of preliminary injunction in a patent infringement case, the Federal Circuit explained that "delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." High Tech Med. Instr., Inc. v. New Image Ind., Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995) (citing the plaintiff's 17-month delay as one of a few factors supporting a finding that there was "no compelling need for interim equitable relief"). A district court has discretion to consider the plaintiff's lack of "overall diligence in seeking a preliminary injunction." Apple, Inc. v. Samsung Electronics Co., 678 F.3d 1314, 1321–26 (Fed. Cir. 2012) ("Apple I") (upholding a district court's finding on irreparable harm where the period of delay spanned from 2 to 4 years); see also Quad/Tech, Inc., 701 F. Supp. 2d at 657 (finding that a delay of 14 months between learning of infringement and filing for injunctive relief "undercuts the urgency that forms the cornerstone of injunctive relief; indeed, this delay indicates a lack of urgency").

Here, it is undisputed that Deltess waited 16 months to file this lawsuit and the Motion after learning of Rio's Read Through Lounger at a trade show in May of 2017. Later that year, Deltess became aware that Rio was actively selling the product, and in March of 2018, Deltess first saw the Read Through Lounger on Amazon's website. See Suppl. Reply in Support (ECF 31, 32) at 8. Yet Deltess waited until September of 2018 to file suit and move for preliminary injunctive relief. Deltess explains that it did not have the resources to immediately pursue litigation and that the "extent of the harm, and potential harm, only became apparent when customers began considering their needs for the 2019 season, during the summer of 2018, and started informing Deltess that they were replacing OSTRICH 3N1 chairs with RIO's infringing Read-Through

Lounger chairs." Reply at 6. This explanation does not ameliorate Deltess's delay.[3] The fact that Deltess learned of a potentially infringing product and sat on its rights for 16 months—during which time it was twice reminded of Rio's presence in the market—weighs heavily against the entry of preliminary equitable relief. Further, this explanation tends to show that damages will be available, and important to Deltess, to compensate Deltess if it can prove its claims at trial. The Court infers from the delay that equitable relief was not a prime concern of Deltess when it first learned of the Rio product, but became more concerned when it saw that its sales and profits were decreasing. This allows the Court to infer that economic harm was more important to Deltess, and Deltess can seek damages to remedy that loss of profits, loss of good will, etc.

### C. Balance of hardships and the public interest

In addition to determining whether Deltess will suffer "irreparable harm" in the absence of a preliminary injunction, this Court must consider the balance of hardships and the impact on the public if preliminary injunctive relief were to be granted.

To examine the potential balance of hardships, the Court compares the "harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." Hybritech Inc., 849 F.2d at 1457. Deltess contends that the balance of hardships weighs "decisively" in its favor because sales of the OSTRICH 3N1 chairs comprise a far greater portion of its revenue, as compared to Rio's revenue from the Read Through Lounger. Mot. at 17. In opposition, Rio argues that "the hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating." Opp'n. at 7.

---

[3]    Deltess has cited decisions from other district courts finding similar reasoning persuasive, but identifies no precedential case from the Federal Circuit requiring this Court to find the same.

The Court acknowledges that sales of the two chairs at issue represent different percentages of the parties' overall revenue. Absent an injunction, the challenges Deltess could face in trying to compete with Rio's presumably infringing chair could cause Deltess harm. However, imposing an injunction could harm Rio and its goodwill by precluding it from honoring its contractual commitments. Rio produced evidence that it had made significant sales to third parties, for delivery in 2019. The Court finds this potential outcome particularly inequitable to Rio in light of Deltess's delay in seeking injunctive relief. Had Deltess sued and successfully moved for a preliminary injunction upon first learning of the Read Through Lounger, Rio may not have been able to sell the chairs to customers for the 2018–2019 purchasing season. The Court thus finds the balance of harms weighs, at best, equally in favor of both parties.

The public interest, however, cuts in favor of Rio. Although there is a recognizable public interest in protecting the rights of patent holders, "the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." Hybritech Inc., 849 F.2d at 1458. The Court may also consider the interest that the public—including Rio's customer base—has against a preliminary injunction. See Apple Inc. v. Samsung Elecs. Co., 735 F.3d 1352, 1372–73 (Fed. Cir. 2013) ("Apple III") (explaining that it was proper for the district court to "consider the scope of [the] requested injunction relative to the scope of the patented features and the prospect that an injunction would have the effect of depriving the public of access to a large number of non-infringing features"); Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 931 (Fed. Cir. 2012) (noting that the district court "properly considered [the defendant's] interest in fulfilling its current contract obligations" before granting the plaintiff's request for a preliminary injunction). Rio has represented that it has received orders from 13 separate customers for the Read Through Lounger, totaling approximately

$613,155.08, for delivery in 2018 and 2019,[4] and that an injunction would keep it from fulfilling its customers' needs.  See Letter of Rio's Counsel to the Court Dated Nov. 28, 208; 2d Cohen Decl. (ECF 30-2) ¶ 13.  We find this public interest weighty, and therefore find for Rio on this factor of the preliminary injunction test.

## V.    CONCLUSION

In conclusion, the Court has decided to deny the Motion for Preliminary Injunction.  The primary reason is the documented undisputed delay in seeking a preliminary injunction, as detailed above.  Deltess simply has no good rational reason for the delay, which materially demonstrates that Deltess did not think it was suffering irreparable harm, as defined by the case law.

Furthermore, the Court concludes that the equity interest of Deltess and Rio are evenly balanced, and that because Rio has made substantial sales to its customers of its competitive chair, for delivery 2019, the issuance of an injunction would not only harm Rio, but also harm Rio's customers, who bought Rio's chair without any reason to believe that Rio's sales would be enjoined.

In making this ruling, the Court has assumed, for present purposes, the validity of the patent and that the Rio product is an infringing product.

As the history of this case will show, the Court urged the parties to proceed directly to a final hearing.  Deltess insisted on filing a motion for preliminary injunction, for which the burden of proving irreparable harm is more difficult to meet.

Given the nature of the product and the proceedings so far, the Court believes minimal discovery will be necessary prior to a Markman hearing and will therefore require the parties to

---

[4]    One of those orders was reportedly already shipped, with an invoice outstanding as of the date of Rio's Letter to the Court.  The amount due on that order is included in the total above.

promptly discuss a schedule for completion of pretrial proceedings and a trial. Deltess's counsel shall prepare a proposed schedule for the following events and serve it on Rio by January 3, 2019. Counsel shall have discussions as necessary and submit either a single, agreed upon procedural order, or separate orders, to the Court by January 10, 2019:

      1.      Fact Discovery completion;

      2.      Service of any expert report from Deltess and any motion re: <u>Markman</u> and/or any dispositive motion;

      3.      Service of any expert report from Rio on <u>Markman</u> and reply to Deltess's motion and/or cross motion;

      4.      The Court will set a hearing date on <u>Markman</u> issues and a trial date.

The Court believes that it can expeditiously manage the further pretrial proceedings and arrive at a prompt final hearing/trial.

An appropriate Order follows.

O:\CIVIL 18\18-4006 Deltess Corp v Rio Brands\ 18cv4006 Memo re Mot. for Prelim. Inj.